**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION**

| | |
|---|---|
| Ahmad Shoaib Hamdard, individually and on behalf of a class of all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>Swift Transportation Co. of Arizona, LLC,<br><br>    *Defendant* | Case No. _____<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

Plaintiff Shoaib Hamdard, by and through his attorneys, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action on behalf of applicants for employment positions as commercial truck drivers who, like himself, are either not of U.S. national origin or not U.S. citizens, challenging a discriminatory policy by Swift Transportation, one of the largest freight transportation companies in North America. As a precondition of employment, Swift requires drivers to have held state-issued U.S. driver's licenses for a period of at least 12 months regardless of how long they had a commercial driver's license, regardless of their actual level of driving experience or driving record, and without taking into account any licensure to drive by a foreign state. This policy does not consider a driver's actual level of driving experience or any other qualification for employment.

1

2. Since this practice has an adverse impact on persons of non-U.S. national origin and discriminates against persons who are predominantly not U.S. citizens, it is unlawful under Title VII of the Civil Rights Act of 1964, the Arizona Civil Rights Act, and the Civil Rights Act of 1871.

3. The experience of Plaintiff, a citizen of Afghanistan and a man of Afghan national origin, legally emigrated to the United States, was legally entitled to work in the United States, and sought employment with Swift as a driver. But his application for employment at Swift was denied solely because at the time he applied Plaintiff had held an Oregon driver's license for 10 months rather than the 12 required by Swift's written policy. In denying Plaintiff employment Swift knowingly failed to consider Plaintiff's foreign driving experience.

4. Plaintiff seeks, individually and on behalf of all of those similarly situated: a declaration finding Swift's discriminatory policy unlawful; an injunction requiring Swift to cease enforcing the discriminatory policy; an award of back pay and benefits; and instatement to positions as applicants for priority consideration for positions as drivers at Swift or, alternatively, an order for front pay and benefits.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States. As to Plaintiff's state law claims, the Court has supplemental jurisdiction over those claims under 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because Defendant has a principal place of business in this District.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant resides in this District.

## PARTIES

8. Plaintiff Shoaib Hamdard is a legal resident of the United States, who is a citizen of Afghanistan and of Afghan national origin. Mr. Hamdard resides in Oregon.

9. Defendant Swift Transportation Co. of Arizona, LLC ("Swift") is a Delaware limited liability corporation with a headquarters and principal place of business in Phoenix, Arizona. It is a subsidiary of Knight-Swift Transportation Holdings Inc. ("Knight-Swift").

## CLASS ALLEGATIONS

**Class Definitions**

10. Plaintiff brings Counts I and II as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following National Origin Class:

> Persons of non-U.S. national origin who applied for positions as drivers with Swift Transportation Co. of Arizona, LLC from April 25, 2020, through the present and at the time of such application had not possessed a U.S. state-issued driver's license for at least 12 months but had possessed an international driver's license for at least 12 months.

11.     Plaintiff brings Count III as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Alienage Class:

> Persons who were not U.S. citizens who applied for positions as drivers with Swift Transportation Co. of Arizona, LLC from April 25, 2020, through the present and at the time of such application had not possessed a U.S. state-issued driver's license for at least 12 months but had possessed an international driver's license for at least 12 months.

**Impracticality of Joinder**

12.     According to Knight-Swift's Form 10-K for the fiscal year ended December 31, 2023, Knight-Swift employs approximately 25,100 company driving associates. Based on the large number of drivers employed by Knight-Swift, Swift's function as an employer of a substantial number of these drivers, and Swift's maintenance of a formal written policy prohibiting hiring drivers with less than 12 months of U.S. state-issued driver's licensure, the members of the National Origin Class and Alienage Class likely number in the hundreds, if not thousands.  As a result, both Classes are so numerous that joinder of all members is impracticable.

13.     Additionally, the nature of Swift's business is such that its drivers and applicants for positions as drivers are located all over the country. According to its website, Swift maintains dozens of terminals around the United States. Joinder is thus impracticable because members of the Classes are geographically dispersed.

**Commonality**

14. There are common issues of law and fact as to all members of the National Origin Class and Alienage Class. These include, among others:

   a. Whether Swift's policy of refusing to hire drivers with less than 12 months of U.S. state-issued driver's licensure has a disparate impact on persons of non-U.S. national origin;

   b. Whether Swift's policy of refusing to hire drivers with less than 12 months of U.S. state-issued driver's licensure constitutes purposeful discrimination against non-U.S. citizens;

   c. Whether there is a business necessity justifying Swift's policy of refusing to hire drivers with less than 12 months of U.S. state-issued driver's licensure; and

   d. To the extent there is such a business necessity, whether less discriminatory alternatives exist to Swift's policy that would equally serve any legitimate purpose.

**Typicality**

15. Plaintiffs' claims are typical of the claims of other members of the Classes because their claims arise from the written policies and practices that applied uniformly to every member of the Classes

**Adequacy**

16. Plaintiff will fairly and adequately represent and protect the interests of the Class.

17. Plaintiff does not have any interests antagonistic to or in conflict with those of the Class.

18. Swift has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

19. Plaintiff is represented by counsel with extensive experience prosecuting employment class actions.

**Rule 23(b)(2)**

20. The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Classes because Swift has acted and/or failed to act on grounds generally applicable to the Classes, making declaratory and injunctive appropriate with respect to the Classes as a whole. This action challenges Swift's policy of refusing to hire drivers with less than 12 months of U.S. state-issued driver's licensure as prohibited national origin discrimination and alienage discrimination. The relief sought in this case primarily consists of a declaration that this policy is unlawful and an injunction requiring instatement of members of the Classes.

**Rule 23(b)(3)**

21. The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied as to the Classes. The common questions of law and fact concern whether Swift's policy of refusing to hire drivers with less than 12 months of U.S. state-issued driver's licensure constitutes prohibited national origin discrimination and alienage discrimination. As the members of the Classes were all members of protected classes who were affected by Swift's policy, common questions related

6

to liability will necessarily predominate over any individual questions precisely because the policy was uniform as to all members of the Classes.

22. A class action is a superior method to other available methods for the fair and efficient adjudication of this action. Resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings. Class certification is a superior method of proceeding because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Swift's legal duties.

23. The following factors set forth in Rule 23(b)(3) also support certification:

    a. The members of the Class have an interest in a unitary adjudication of the issues presented in this action

    b. No other litigation concerning this controversy has been filed by any other members of the Class.

    c. This District is the most desirable location for concentrating this litigation because (i) Swift is headquartered in this District and (ii) a number of the witnesses are expected to be located in this District.

    d. There are no anticipated difficulties in managing this case as a class action.

## FACTUAL ALLEGATIONS

**Swift Transportation**

24. According to Knight-Swift's Form 10-K for the fiscal year ended December 31, 2023, Knight-Swift is one of the largest freight transportation companies in North America.

25. According to Knight-Swift's Form 10-K for the fiscal year ended December 31, 2023, Knight-Swift operates more than 25,000 tractors—commercial vehicles intended to pull cargo trailers.

26. According to Knight-Swift's Form 10-K for the fiscal year ended December 31, 2023, Knight-Swift employs approximately 34,800 employees, including 25,100 company driving associates: Knight-Swift's professional driving workforce.

27. According to Knight-Swift's Form 10-K for the fiscal year ended December 31, 2023, Swift is a subsidiary of Knight-Swift. Based on references to Swift in Plaintiff's employment application form, Swift is an operating subsidiary of Knight-Swift through which Knight-Swift employs members of its professional driving workforce.

**Plaintiff Immigrates to the United States and Seeks Employment as a Driver**

28. Plaintiff is of Afghan national origin and is an Afghan citizen.

29. From approximately August 2012 through May 2017, Plaintiff lived in Salzburg, Austria, where he was a student. While living in Austria, Plaintiff met a woman to whom he became engaged.

30. In late 2017, Plaintiff returned to Afghanistan. He applied for a non-immigrant K-1 fiancé visa to come to the United States.

31. In October of 2020, Plaintiff moved from Afghanistan to the United States on a non-immigrant K-1 fiancé visa.

32. During the approximately three year period between his return to Afghanistan and his moving to the United States, Plaintiff maintained an Afghan drivers' license.

33. During the approximately three year period between his return to Afghanistan and his moving to the United States, Plaintiff regularly drove in Afghanistan.

34. In January of 2021, Plaintiff enrolled in GED and ESL classes at Treasure Valley Community College in Ontario, Oregon, while he waited for his immigration and work authorization paperwork to be processed.

35. Plaintiff was issued an Oregon driver's license in January 2022.

36. In February of 2022, having received work authorization, Plaintiff began working as a warehouse associate at an Amazon fulfillment center in Nampa, Idaho. While working for Amazon, he also began attending classes at 160 Driving Academy in Nampa, Idaho.

37. According to its website, 160 Driving Academy is one of the top truck driving schools in the country. It provides classes and training for students who are pursuing a Class A Commercial Driver's License ("CDL").

38. Plaintiff completed his training at 160 Driving Academy and earned his CDL.

**Swift Refuses to Hire Plaintiff Based on its Discriminatory Policy**

39. Upon receiving his CDL, Plaintiff applied for a position as a driver with Swift on or about October 19, 2022.

40. Plaintiff was placed in contact with a recruiter who identified himself as "Chris J." to complete the application process.

41. On October 22, 2022, Plaintiff and a Swift employee who identified himself as "Joey" spoke by telephone. Joey informed Plaintiff that Swift had a policy that any applicant for a driver position was required to have held a U.S. state-issued drivers' license for at least 12 months. Based on that policy, Joey informed Plaintiff that his application was "going to get turned down."

42. Joey further explained that it did not matter what class of U.S. drivers' license an applicant had—a CDL was not required for this position, and the position did not require any prior experience as a commercial truck driver. But applicants were required to have a domestic U.S. drivers' license for at least 12 months.

43.     Plaintiff explained to Joey that he had an international driver's license and had driven for three years in Afghanistan before coming to the United States. Joey stated that this did not meet the requirements of Swift's policy.

44.     Indeed, driving in Afghanistan is particularly challenging and demanding compared to driving in the United States. A 2014 report by the Washington Post noted that poor highway maintenance had turned much of the Afghan highway system into "death traps, full of cars careening into bomb-blast craters or sliding off crumbling pavement." On Highway One, the 300 mile highway connecting Kabul and Kandahar, drivers faced "truck-sized holes in the asphalt" caused by improvised explosive devices, few of which were adequately filled. A photo of one such obstacle is below.



45.     Joey further informed Plaintiff that he "check[ed] with leadership" to confirm that Plaintiff's hiring was prohibited by company policy, and that Joey had not made the decision but was responsible for enforcing it.

46.     After this call with Joey, Plaintiff spoke further with Chris J. Chris J. confirmed that the policy requiring any applicant for a driver position to have held a U.S. state-issued drivers' license for at least 12 months was a written company policy at Swift.

47.     Plaintiff informed Chris J. that if the issue was confirming his U.S. residency, he could provide documentation establishing he had been a U.S. resident for about two years. Chris J. informed Plaintiff that this would not satisfy the policy.

48.     Chris J. stated to Plaintiff that except for his lack of sufficient time with a U.S. drivers' license Plaintiff was "exactly what they [i.e., Swift] need" and would have been a good driver for them.

**Plaintiff Exhausts His Administrative Remedies**

49.     Plaintiff filed a charge of national origin discrimination against Swift with the Equal Employment Opportunity Commission on August 3, 2023, by U.S. Mail.

50.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff dated January 29, 2024.

**COUNT I**
**National origin discrimination in violation of**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*,**
**on behalf of the National Origin Class**

51.     Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

52. Plaintiff is of Afghan national origin and thus belongs to a protected class under Title VII.

53. Plaintiff was qualified for the position of a driver at Swift, including because: (a) he had completed training for a CDL at 160 Driving Academy; (b) he had in fact been issued a CDL; (c) he had more than three years of driving experience; (d) he had no record of denial, suspension, or revocation of a driver's license whether in the United States or Afghanistan; (e) he had no criminal record; and (f) he had been involved in no accidents or incidents with a vehicle in the prior five years.

54. Plaintiff was subject to an adverse employment action because his application for employment was rejected by Swift.

55. Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least 12 months is facially neutral but has a disparate impact on job applicants who are not of U.S. national origin. Members of the Class—who did not have a state-issued driver's license for at least 12 months when they applied to drive for Swift but did have a foreign driver's license—are predominantly not of U.S. national origin.

56. Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least 12 months is not consistent with business necessity.

57. Even if Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least

12 months were consistent with business necessity, less discriminatory alternatives exist that would equally serve any legitimate purpose. For instance, if the concern were whether the applicant has sufficient driving experience, Swift could count the driver's period of international driver's licensure towards the 12 month requirement.

**COUNT II**
**National origin discrimination in violation of**
**the Arizona Civil Rights Act, Ariz. Rev. Stat. § 41-1463,**
**on behalf of the National Origin Class**

58. Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

59. Plaintiff is of Afghan national origin and thus belongs to a protected class under the Arizona Civil Rights Act.

60. Plaintiff was qualified for the position of a driver at Swift, including because: (a) he had completed training for a CDL at 160 Driving Academy; (b) he had in fact been issued a CDL; (c) he had more than three years of driving experience; (d) he had no record of denial, suspension, or revocation of a driver's license whether in the United States or Afghanistan; (e) he had no criminal record; and (f) he had been involved in no accidents or incidents with a vehicle in the prior five years.

61. Plaintiff was subject to an adverse employment action because his application for employment was rejected by Swift.

62. Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least 12 months is facially neutral but has a disparate impact on job applicants who are not of U.S. national origin. Members of the Class—who did not have a state-issued driver's license for at least 12 months when they applied to drive for Swift but did have a foreign driver's license—are predominantly not of U.S. national origin.

63. Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least 12 months is not consistent with business necessity.

64. Even if Swift's policy and practice of refusing to hire otherwise qualified drivers who have not had a U.S. state-issued driver's licenses for at least 12 months were consistent with business necessity, less discriminatory alternatives exist that would equally serve any legitimate purpose. For instance, if the concern were whether the applicant has sufficient driving experience, Swift could count the driver's period of international driver's licensure towards the 12-month requirement.

## COUNT III
**Alienage discrimination in violation of
the Civil Rights Act of 1871, 42 U.S.C. § 1981,
on behalf of the Alienage Class**

65. Plaintiffs incorporate and re-allege by reference each of the foregoing paragraphs as if fully set forth herein.

66. Under the Civil Rights Act of 1871, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…." 42 U.S.C. § 1981(a).

67. The Ninth Circuit has held that this provision prohibits discrimination in employment on the basis of alienage. *Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004).

68. The Civil Rights Act of 1871 further provides that "The rights protected by this section are protected against impairment by nongovernmental discrimination." 42 U.S.C. § 1981(c).

69. Swift's policy of requiring 12 months of possession of a state-issued driver's license discriminates against non-citizens. Members of the Class—who did not have a state-issued driver's license for at least 12 months when they applied to drive for Swift but did have a foreign driver's license—are predominantly non-U.S. citizens.

70. Swift's discrimination against non-citizens is purposeful. The requirement that applicants have not just a driver's license nor some specified amount of driving experience but rather a drivers' license issued by a state of the United States is irrational and lacks a nexus to a legitimate business rationale. An intent to disfavor non-citizens can thus be readily presumed.

## PRAYER FOR RELIEF

Wherefore Plaintiff, on behalf of himself and the Class, prays that judgment be entered against Defendant on all claims, and request that the Court order or award the following relief:

A. A declaration that the policies and practices complained of herein are unlawful;

B. An injunction against Defendant and its officers, agents, employees, and representatives prohibiting them from engaging in the unlawful practices and policies complained of herein, consistent with the less discriminatory alternatives described above;

C. An order instating Plaintiff and members of the Class to their rightful positions at Swift as applicants and requiring that they be given priority consideration for hire in job vacancies in the positions in which they are qualified, or in lieu of instatement, an order for front pay and benefits;

D. Back pay accruing as a result of a delay in hiring Plaintiffs and Class members caused by the illegal policies and practices alleged herein;

E. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e(k) & 2000e-16;

F. Pre-judgment and post-judgment interest, as provided by law; and

G.  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure for all causes of action and issues for which trial by jury is available.

Dated: April 25, 2024

Respectfully submitted

Colin M. Downes
(application for admission *pro hac vice* to be filed)
BARTON & DOWNES LLP
1633 Connecticut Ave., N.W.
Washington, D.C. 20009
Tel: (202) 734-7046
Email: colin@bartondownes.com

Matthew Z. Crotty
(application for admission *pro hac vice* to be filed)
RIVERSIDE NW LAW GROUP, PLLC
905 W. Riverside Ave.
Ste. 208
Spokane, Washington 99201
Tel; (509) 850-7011
Email: mzc@rnwlg.com

*Attorneys for Plaintiff*