**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ahmad Shoaib Hamdard, | No. CV-24-00943-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Swift Transportation Company of Arizona LLC, | |
| Defendant. | |

Pending before the Court is Defendant Swift Transportation Company of Arizona's ("Swift") motion to dismiss (Doc. 9) Plaintiff Ahmad Shoaib Hamdard's Complaint (Doc. 1). The motion is fully briefed.[1] (Docs. 13, 16.) For the reasons set forth herein, the Court grants the motion.

**I.    Background[2]**

Swift is one of the largest freight transportation companies in North America, and it employees approximately 25,100 driving associates. (Doc. 1 ¶¶ 24, 26.) Hamdard is an Afghan citizen of Afghan national origin who, while living in Afghanistan from 2017 through 2020, maintained an Afghan driver's license. (*Id.* ¶¶ 28, 30–32.) In 2020, Hamdard moved from Afghanistan to the United States on a non-immigrant K-1 fiancé visa. (*Id.* ¶ 31.) He obtained an Oregon driver's license in January 2022 and later that same year,

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

[2] The following facts are drawn from the allegations in the Complaint (Doc. 1), which the Court accepts as true for the purposes of this order.

obtained his Commercial Driver's License ("CDL"). (*Id.* ¶ 35, 38.) After obtaining his CDL, Hamdard applied for a position as a driver with Swift (though the position he applied for did not require a CDL). (*Id.* ¶ 39.)

Amid Hamdard's application process, a Swift employee informed Hamdard that Swift has a policy requiring any applicant for a driver position to have held a United States state-issued driver's license for at least twelve months prior to applying. (*Id.* ¶ 41.) At that point, Hamdard had his Oregon driver's license for only ten months. He was told when he applied for the job, that, for that reason, his application would be turned down. (*Id.*) Another employee told Hamdard that, but for his lack of a state-issued driver's license for the requisite period, Hamdard was exactly the kind of employee that Swift needed and that Hamdard would have been a good driver for Swift. (*Id.* ¶ 48.)

Hamdard brings suit on behalf of himself and a putative class of non-U.S. national origin applicants to Swift who did not have a U.S. state-issued driver's license for at least twelve months prior to their application but who did have an intentional driver's license for that time. (*Id.* ¶ 10.) Hamdard alleges three counts: (1) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) national origin discrimination in violation of the Arizona Civil Rights Act ("ACRA"); and (3) alienage discrimination in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1981.[3] (*Id.* at 12–16.) Swift moves to dismiss all counts for failure to state a claim under Rule 12(b)(6). (Doc. 9 at 2.)

**II.  Legal Standard**

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must include sufficient facts to demonstrate that the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For Rule 12(b)(6) motions, the Court accepts all well-pled factual allegations as true and construes those allegations in a light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Still, the Court is

---

[3] Hamdard exhausted his administrative remedies, filing a charge of discrimination with the Equal Employment Opportunity Commission and obtaining his Notice of Right to Sue prior to filing suit in this Court. (*Id.* ¶¶ 49–50.)

not required "to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). If the plaintiff fails to nudge his claim "across the line from conceivable to plausible," the Court will dismiss it. *Twombly*, 550 U.S. at 570.

## III. Analysis

The Court analyzes Swift's arguments for dismissal of Counts I and II together.[4] The Court then considers Swift's argument for dismissal of Count III.

### a. Counts I and II

Title VII and the ACRA prohibit an employer from using a "particular employment practice that causes a disparate impact on the basis of . . . national origin" unless the employer can demonstrate that the practice is "job related" and "consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i); *accord.* Ariz. Rev. Stat. Ann. § 41-1463. A disparate-impact claim involves an employment practice that is neutral on its face but "that in fact fall[s] more harshly on one group than another[.]" *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (quotation omitted). To plead a disparate-impact claim under Title VII and ACRA, a plaintiff must plausibly allege: (1) a significant disparate impact on a protected group; (2) the specific employment practice, policy, or selection criteria at issue; and (3) a causal relationship between the challenged practice, policy, or criteria and the disparate impact. *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227 (9th Cir. 2023).

At the pleadings stage of a disparate impact claim, the plaintiff need not support his claim with statistics where the disparate impact is obvious. *Id.* Swift contends that Hamdard fails to plausibly allege the first element of his national origin discrimination claims because he failed to include statistical allegations demonstrating a disparate impact. (Doc. 9 at 4.) Hamdard responds that the disparate impact is obvious, so statistical allegations are unnecessary. (Doc. 13 at 9.)

---

[4] "[T]he [ACRA] is 'generally identical' to Title VII, and therefore 'federal Title VII case law [is] persuasive in the interpretation of [the ACRA].'" *Bodett v. Coxcom*, 366 F.3d 736, 742 (9th Cir. 2004) (quoting *Higdon v. Evergreen Int'l Airlines, Inc.*, 1673 P.2d 907, 909–10 n.3 (1983)).

The Court agrees with Swift: Hamdard fails to allege an *obvious* disparate impact and thus does not plausibly allege a disparate-impact claim. Hamdard defines the affected class as Swift applicants of "non-U.S. national origin." (Doc. 1 ¶ 10.) As Swift points out, "national origin" under Title VII means "the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88 (1973). If Hamdard means that the class is specifically those applicants who were born outside of the United States, he has not alleged that. Applicants of "non-U.S. national origin" would include applicants of Hispanic, Italian, Nigerian, French, Haitian, and Japanese *descent*—just to name a few—regardless of whether those applicants were born or ever lived in another country. In fact, the only people who would not be included in the class as defined by the allegations are Native Americans. In other words, it is almost impossible to imagine there exists more than a minority of Swift applicants who are of purely U.S. national origin. And without basic statistical allegations regarding the impact of the policy on the class, there is no plausible inference that Swift's policy has a disparate impact on applicants of non-U.S. national origin.

Hamdard's attempt to cabin the class to only those applicants of non-U.S. national origin who have not held a U.S. state-issued driver's license for the preceding twelve months but who have held an international driver's license for that time does not save his claims. (Doc. 1 ¶ 10.) Hamdard provides no support for his assertion that a plaintiff can define the class by the challenged policy itself.[5] Title VII and ACRA protect against national origin discrimination; they do not protect persons of non-U.S. national origin who did not have a state-issued driver's license for at least twelve months when they applied to drive for Swift but who had an international license for that time. *Cf. Bray v. Alexandria*

---

[5] Hamdard cites several cases in his response where courts recognized that evidence of hostility towards minorities or foreign nationals generally can support disparate *treatment* claims even if the plaintiff's particular sub-class was not always the target of the hostility. (*See* Doc. 13 at 14 (citing *Unal v. Los Alamos Pub. Sch.*, 638 Fed. App'x 729, 737–38 (10th Cir. 2016); *Mallare v. St. Luke's Hosp. of Bethlehem*, 699 F. Supp. 1127, 1132–33 (E.D. Pa. 1988); *Prokopiou v. Long Island R.R. Co.*, No. 06-cv-2558, 2007 WL 1098696, at *4 (S.D.N.Y. Apr. 9, 2007)).) But those cases do not deal with disparate *impact* issues and certainly do support the proposition that a plaintiff can define a class with boundaries other than protected characteristics.

- 4 -

*Women's Health Clinic*, 506 U.S. 263 (1993) ("Whatever may be the precise meaning of a 'class' . . . , the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."). Hamdard fails to state a disparate-impact claim, and the Court will dismiss Counts I and II.

### b. Count III

Section 1981 prohibits discrimination in hiring based on one's citizenship or alienage. *Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004); *Rajaram v. Meta Platforms, Inc.*, 105 F.4th 1179, 1181 (9th Cir. 2024). "In order to state a cause of action under 42 U.S.C. § 1981, a plaintiff must plead that the defendant purposefully discriminated against them." *Adhvaryu v. Bank of Am., N.A.*, No. SA CV 18-1836-DOC (ADSx), 2019 WL 6499211, at *7 (C.D. Cal. Aug. 19, 2019) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 485 U.S. 375, 391 (1982)); *see also Lowe v. City of Monrovia*, 775 F.2d 998, 1010 n.10 (9th Cir. 1985) ("A plaintiff suing under section 1981 may prevail only by establishing intentional discrimination, *i.e.*, disparate treatment."). While a plaintiff may demonstrate discriminatory intent in several ways, a presumption of intent arises where the targeted activity is (1) the "irrational object of disfavor" and (2) is conducted "exclusively or predominantly by a particular class of people." *Bray*, 506 U.S. at 270.

The Complaint is devoid of any allegations of discriminatory animus. In fact, Hamdard alleges that a Swift recruiter said Hamdard was exactly the candidate Swift needed for the job, except for his lack of sufficient time holding a U.S. state-issued driver's license. (Doc. 1 ¶ 48.) He argues instead the Complaint's allegations create a presumption of intent because Swift's policy targets an irrational object of disfavor that is conducted predominantly by non-U.S. citizens. The Complaint does not include sufficient allegations to make it plausible that Swift's policy predominantly affects non-U.S. citizens. As Swift highlights, "[p]lenty of U.S. citizens don't have a valid U.S. state-issued driver's license." (Doc. 9 at 10.) There are many reasons that a U.S. citizen may not have a state-issued driver's license. For instance, someone who lives in a city where public transit is widely available may not need to drive herself anywhere until she moves to a place like Oregon.

But even assuming those who don't meet Swift's requirement are predominantly non-citizens, the policy does not target an irrational object of disfavor. In *Bray*, the Supreme Court offered an example of targeting an irrational object of disfavor: "A tax on wearing yarmulkes is a tax on Jews." 506 U.S. at 270. At the risk of sounding pedantic, a policy that an applicant for employment as a *driver in the United States* must have a *U.S. state-issued driver's license for a year* does not target an irrational object of disfavor. Hamdard fails to plausibly allege a § 1981 claim, so the Court will dismiss Count III.

## IV. Conclusion

The Court dismisses the Complaint for failure to state a claim under Rule 12(b)(6). The Court denies Hamdard's request for leave to amend because he failed to comply with Local Rule 15.1(a) and the Court's standard order (Doc. 4).

**IT IS ORDERED** that Swift's motion to dismiss (Doc. 9) is **GRANTED**. The case is dismissed with prejudice. The Clerk of the Court is directed to terminate the case.

Dated this 14th day of March, 2025.

Douglas L. Rayes
Senior United States District Judge